IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Barry Rose, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | 16 CV 5088 |
| | ) | |
| | ) | |
| RICHARD HANEY, individually and in his | ) | **JURY DEMAND** |
| capacity as Provost of the College of Lake | ) | |
| County and THE COLLEGE OF LAKE | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendants | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiff, BARRY ROSE, through his attorney, Stone & Associates Ltd., complains of RICHARD HANEY, and the COLLEGE OF LAKE COUNTY and alleges as follows:

**INTRODUCTION**

Plaintiff was wrongfully terminated from his position as an Adjunct Professor at the College of Lake County (CLC) in January of 2016 for allegedly writing disrespectful emails to faculty and students at CLC in 2015. Defendants' actions were unwarranted and in violation of Plaintiff's constitutional rights to Due process and Freedom of Speech because Plaintiff was never afforded any due process hearing to present testimony and documentary evidence in opposition to the Defendants' act of terminating his employment. The Plaintiff contends that the content of the emails was protected free speech. Plaintiff seeks reinstatement of his position as an Adjunct Professor at CLC, complete with back-pay and compensation for loss benefits from the time of his wrongful termination.

**JURISDICTION AND VENUE**

This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §1983. This court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This court has the authority to award the requested declaratory relief under 28 U. S.C. § 2201; the requested damages under U.S.C. § 1343(3) and attorney's fees under 42 U.S.C. § 1988.

Venue is proper under 28 U.S.C. § 1391 in the Northern District of Illinois because a substantial part of the actions or omissions giving rise to this case occurred within the Northern District and at least one Defendant resides in the Northern District.

## **THE PARTIES**

Plaintiff BARRY ROSE has been a practicing attorney since he was admitted to the bar in Illinois in 1977. Plaintiff has been an Adjunct Professor at the College of Lake County (CLC) from January 2007, until his termination in January of 2016.

Defendant RICHARD HANEY is Provost at the CLC and he conducted the investigatory interviews which concluded Plaintiff should be terminated from his position as an Adjunct Professor at the CLC.

Defendant COLLEGE OF LAKE COUNTY employed Plaintiff BARRY ROSE, and employs Defendant RICHARD HANEY.

### Individual and Official Capacity

Defendant Haney is being sued in an individual and official capacity. It cannot be ascertained at this time by Plaintiff whether Defendant Haney was acting on his own or under the direction of other persons at CLC. As will be discussed below, CLC did not comply with its own procedures in its actions directed at the Plaintiff. Only through the discovery process could Plaintiff determine whether Defendant Haney was acting individually, or under strict direction from CLC when he deviated from CLC policies. Moreover, many other actors at CLC, not named as Defendants, were involved in the unlawful actions against Plaintiff, including but not limited to, Paralegal Department co-chairs, Gayle Miller and Lorri

Scott, former Dean of the Business Division, Lourdene Huhra, the current head of the newly-entitled Business and Social Science Division, Jeffrey Stomper. Similar to Defendant Haney, without Discovery, Plaintiff cannot ascertain whether these persons were acting personally or under the direction of CLC officials.

## FACTS

1. Plaintiff Barry Rose has been an Adjunct Professor at the College of Lake County (hereafter CLC) in its Paralegal Program since January of 2007 and has taught Legal Research and Writing and Administrative Agency Law at CLC at various times in CLC's Paralegal Program.

2. Plaintiff was nominated for Teacher of the Year award in the 2010-2011 semesters and again in 2014. In 2010-2011, Plaintiff was not recognized as the Teacher of the Year, but was awarded a plaque which reads Outstanding Faculty of the Year.

3. Moreover, Plaintiff has consistently received outstandingly favorable evaluations from his students as their instructor. For example, in his two most recent evaluations he scored an average of 4.75 on a 5-point scale, which is one of the highest, if not the highest evaluation scores, any Paralegal Program instructor at CLC has ever received from the students.

4. In early 2011 Plaintiff requested and received a meeting with Defendant RICHARD HANEY, who at that time was Vice-President of Educational Affairs, to discuss Plaintiff's concern with the lack of any thorough effective evaluation of the instructors at CLC.

5. At that meeting Defendant RICHARD HANEY quickly admitted to Plaintiff that the instructor evaluation methods used at CLC were inadequate. Plaintiff and Defendant HANEY had a discussion regarding Plaintiff's concerns. Soon after that meeting, Plaintiff sent Defendant HANEY a detailed email recounting their discussion and offering to work on improvements to CLC's teacher evaluation system.

6. Defendant HANEY neither contacted Plaintiff, nor implemented any changes in the evaluation system. Therefore, Plaintiff contacted the President of CLC, Dr. Weber, on at least two occasions to discuss Plaintiff's concerns. However, Dr. Weber never would agree to meet with Plaintiff, but instead referred Plaintiff to discuss his concerns with the Defendant HANEY.

7. In April of 2015 Plaintiff requested he be allowed to attend the semi-annual meeting of the Paralegal Advisory Board on April 24, 2015. The co-chair of the Paralegal Program, Lorri Scott informed Plaintiff he could attend. Plaintiff received a formal invitation to attend. However, Ms. Scott, also inquired of Plaintiff whether he had any particular issues he wanted addressed at the meeting. Plaintiff said he had no particular issue other than the future of the adjuncts in the Paralegal Program, as Plaintiff simply wanted to learn the latest developments in the Paralegal Program.

8. Several emails were exchanged, and Ms. Scott ultimately decided to have the then-Dean of the Business Division, Lourdene Huhra, received the invitation to Plaintiff to attend the Advisory Board meeting.

9. When the decision was made to exclude Plaintiff from the meeting, Plaintiff asserted that these Advisory Board meetings should be open to the public pursuant to the Public Community Colleges Act 110 ILCS 805 (2014), and the Open Meetings Act 5 ILCS 120/1 (2014). Thereafter, the college relented.

10. Plaintiff was allowed to attend the meeting, but was treated coldly and harshly. Specifically, Plaintiff was removed from his second row seat near a colleague, and was told he must sit in the back row. Furthermore, when everyone at the meeting was asked to introduce himself, or herself, Plaintiff was purposely the only person at the meeting who was skipped. One of the Advisory Board attendees sent an email to Plaintiff after the meeting to state her realization that indeed the faculty at CLC despised him.

## COUNT I

## First Amendment Violation of Freedom of Speech under Title 42 Section 1983

## Retaliatory Termination

11. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 10 of this Complaint for his cause of action under the First and Fourteenth Amendments.

12. Plaintiff has consistently advocated for the students at CLC.

13. The CLC Paralegal Program began in August 2006. The only instructor hired at that point was Gayle Miller. Due to the fact that enrollment exceeded expectations, Gayle Miller hired several additional instructors. Plaintiff BARRY ROSE was hired in January of 2007 to teach Administrative Agency Law, which is one the areas of law in which he concentrated. Plaintiff was hired on merit, based on his resume and experience in that field of law. Plaintiff continued to teach Administrative Agency Law once a year, and also taught Legal Research and Writing for one and sometimes two sections each semester.

14. In January of 2014, Plaintiff had accepted offers to teach Administrative Agency Law, and Legal Research and Writing. However, his section of Legal Writing was canceled due to alleged low enrollment, and Ms. Scott decided to replace herself as instructor for Plaintiff's Administrative Agency Law class, for which as a full-time instructor under CLC policy, she was entitled to do regardless of Plaintiff's superior experience and expertise in that area of law. After that semester, teaching opportunities at CLC for Plaintiff were limited to mostly once a year offers to teach Legal Writing.

15. As mentioned above, at or about the same time, Plaintiff was attempting to convince Defendant HANEY and President Dr. Jerry Weber of CLC to institute changes in the teacher evaluation methods used at CLC.

16. While Plaintiff did advocate for changes in the Faculty evaluation process and changes in selection of teaching staff within the program, Plaintiff did not disparage any instructors of

other persons. Instead, the harshest comment Plaintiff ever made was that he believed that CLC did not always have the best interests of CLC students at heart.

17. As indicated above, NONE of the emails written by Plaintiff were disrespectful, defamatory or derogatory of CLC personnel, but instead merely expressed concern whether CLC administration was acting in the best interests of its students. It is clear that Plaintiff had a different point of view on these issues than the staff and administration of CLC, but an objective analysis of Plaintiff's emails would be that although at times critical of CLC policies, this correspondence was respectful.

18. A publicly-funded community college has a duty to foster an atmosphere of an honest and open exchange of ideas; but instead of welcoming such a dialogue, the CLC administration decided to silence one of its best instructors, who always championed the rights of CLC students who he felt were being short-changed by CLC policies.

19. On or about September 3, 2015, Plaintiff timely submitted a request to teach eight courses in the Spring 2016 semester, including two he had taught before on numerous occasions, Legal Research and Writing and Administrative Agency Law. Plaintiff asked to teach eight courses (all of which he was qualified to teach) because his union informed him that to request numerous courses would increase his chances to receive an offer to teach at least one course. CLC was obligated to extend an offer to Plaintiff if any course for which he was qualified to teach were available. CLC had until October 30, 2015, to inform Plaintiff whether he would be offered any classes for Spring of 2016. In late October 2015, Plaintiff did receive an offer to teach Legal Research and Writing for the Spring 2016 semester. Plaintiff promptly accepted that offer.

20. Plaintiff was ostracized by CLC administration after he was allowed to observe the Paralegal Advisory Board meeting.

21. On or about September 6, 2015, only a couple of business days after Plaintiff timely submitted his request to teach the afore-mentioned eight courses, Defendant RICHARD

HANEY sent an email to Plaintiff insisting Plaintiff attend an Investigatory Interview to discuss concern about emails Plaintiff sent to faculty and students. Plaintiff was not informed of which emails were involved and was not advised of any consequences he might suffer as the result of this Investigatory Interview. Plaintiff did not want to attend because he was not teaching in the Autumn 2015 semester. Plaintiff was also informed, after indicating his reluctance to attend, that he would be cited for insubordination if he did not appear.

## Matters of Public Concern

22. Many of the emails in question related to Plaintiff's issues with the teacher evaluation system utilized by CLC, and the refusal of CLC to allow Plaintiff to volunteer as a tutor at CLC's Writing Center, despite his obvious qualifications to do so.

23. It was NOT part of Plaintiff's duties as an instructor to express concern regarding the teacher evaluation system used at CLC. It was also NOT required as part of his instructor duties that Plaintiff offer to volunteer his time at the Writing Center. Both of these concerns of Plaintiff were expressed by him because of Plaintiff's advocacy for the students' rights to obtain the best possible education consistent with the Mission Statement of CLC.

24. Indeed, the Mission Statement of CLC states in relevant part:

> The college will maximize the quality of the CLC learning experience while helping students identify and reach their learning goals to become life-long learners and critical thinkers who are engaged in their communities, prepared to participate in the workforce and knowledgeable about the diverse world in which we live.

25. It appears inconsistent with CLC's Mission Statement to fail to have an effective teacher evaluation system for its instructors, and to prohibit the adjunct faculty such as Plaintiff, from volunteering his services as a tutor at the Writing Center, despite his 40-years writing experience as an attorney, and 20+ years of experience working with students.

26. As further evidence that Plaintiff's concerns were a matter of public concern, Plaintiff on June 2, 2015, expressed these very concerns in writing to State Senator Melinda Bush.

27. Additionally, on August 21, 2015, Plaintiff wrote a similar letter to State Representative Sam Yingling to express Plaintiff's concerns.

28. Prior to the Investigatory Interview for which Plaintiff was summoned, Plaintiff requested that CLC indicate which emails were of concern to CLC. After the request by Plaintiff, Defendant HANEY did indicate which emails were the ones in question to CLC.

29. Plaintiff also requested that co-chairs Gayle Miller and Lorri Scott attend the Investigatory Interview so he could question them. Defendant HANEY informed Plaintiff he could "not dictate" who would attend the meeting, and that he alone (with a union representative) would attend.

30. Plaintiff also requested that the Investigatory Interview be recorded to preserve what would be discussed at the meeting. CLC had NO official policy against recording these Investigatory Interviews, but Plaintiff was informed by Defendant HANEY and counsel for Defendants that the meeting would not be recorded. Moreover, Defendant HANEY informed Plaintiff that if Plaintiff brought a recording device or a court reporter to the Investigatory Interview, the Interview would be dismissed and Plaintiff would be held as insubordinate. Insubordination could subject Plaintiff to termination under the adjunct union contract.

31. Thus, Plaintiff did reluctantly attend this Investigatory Interview on September 16, 2015. Also present were Defendant HANEY, attorney Rachel Lutner from ROBBINS SCHWARTZ, and a couple of Plaintiff's union representatives.

32. At this meeting Plaintiff was subjected to questions from Defendant HANEY and the attorney from the attorney from ROBBINS SCHWARTZ, which Plaintiff answered to the best of his ability. However, when Plaintiff attempted to ask questions of his own, Defendant was informed that Plaintiff was there to only answer questions, not to ask any of his own.

33. On October 30, 2015, Plaintiff was electronically informed he was offered to teach Legal Research and Writing in the Spring 2016 semester. Plaintiff immediately accepted the offer via email, and was informed his acceptance was sent to the proper persons at CLC.

34. No contract was ever presented to Plaintiff though, which suggests Defendants had already decided to withdraw that course offer to him, prior to the completion of the investigation.

35. No account of the proceedings of the September 16, 2015, meeting was provided to the Plaintiff or his union representatives, but Plaintiff was informed he must attend an additional Investigatory Interview, which was held on December 16, 2015. Consistent with the earlier meeting, Plaintiff was not allowed to record the meeting and was not allowed to ask any questions or present evidence on his behalf.

36. On December 15, 2015, Plaintiff was informed by letter that his email and other privileges to access CLC's faculty portal were immediately revoked, though the completion of the Investigation would not be expected to be completed until the end of January 2016. Plaintiff had no ability to back-up his emails because his email account was already terminated by the time he received the letter informing him of that fact. To this day, Plaintiff has no access to these emails which are important to Plaintiff's claims against the Defendants.

37. On January 17, 2016, Plaintiff was informed by letter that CLC had rescinded his right to teach Legal Research and Writing, despite the fact he had accepted the offer to teach that course. CLC cited no authority to support its position, and Plaintiff had already expended numerous hours in preparation to teach that class, which was scheduled to begin on January 25, 2016. According to the CLC contract used for adjuncts, Plaintiff's contract could <u>only</u> be terminated for cause, and only by the Board of Trustees, which was not set to meet until January 28, 2016.

38. On January 30, 2015, Plaintiff received a detailed letter from Defendant Haney with exhibits that informed Plaintiff he was being terminated as an adjunct for CLC. This letter included many unfounded statements and conclusions, and as indicated above, Plaintiff was NEVER provided an opportunity to present his positions regarding the emails in question.

## COUNT II

## VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW (42 U.S.C. § 1983)

39. 50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 38 in this Complaint for this Cause of Action under the Due Process Clause of the 5th and 14th Amendments to the Constitution of the United States of America.

40. Section 331 of the CLC Employee Handbook, specifically indicates that terminated adjuncts are to be afforded Due Process. Nevertheless, Plaintiff was denied Due Process by the following acts of the Defendants:

> a. Plaintiff was not advised of any legal authority and basis for the Investigatory Interview at which he was ordered to appear.
>
> b. Plaintiff was not initially advised which e-mails he wrote were involved in the investigation.
>
> c. Plaintiff was told he could not ask questions, but was summoned to the Investigatory Interview to answer questions AND not to ask any of his own. Nor was Plaintiff advised that he could seek counsel, offer his own testimony, call witnesses on his behalf, or cross-examine witnesses against him.
>
> d. The Investigatory Interviews were not recorded as Defendants specifically denied Plaintiff's request to have them recorded. Furthermore, Defendants stated that in the event Plaintiff brought a recording device or a court reporter to the Investigatory Interview, the hearing would be dismissed and Plaintiff would be found to be insubordinate.
>
> e. Plaintiffs was never informed of any possible legal or personal consequences which could result from the findings of the Investigatory Interviews.
>
> f. Plaintiff's email access, and access to other faculty resources at CLC was terminated in December of 2015 without first being informed that it would be done. Moreover, CLC stated it would not complete its investigation of these emails until January of 2016. Thus, Defendants took its punitive action against Plaintiff prior to the completion of its own investigation.

        g. Plaintiff had a valid contract to teach Legal Research and Writing for the Winter Semester, which began in late January of 2016. However, Defendants terminated the contract before completing its investigation, and did so in violation of the contract itself, which states an adjunct with a contract can only be terminated for cause by the Board of Trustees.

        h. The Board of Trustees on January 30, 2016, authorized the termination of Plaintiff's employment at CLC after CLC had already voided Plaintiff's contract to teach, and additionally CLC did not offer Plaintiff any opportunity to appeal his termination.

41. Furthermore, the Adjunct Union Contract with CLC requires any investigation to be initiated by the appropriate Dean, which in this case would be Dean Jeffrey Stomper. Dean Stomper never contacted Plaintiff regarding these emails. Moreover, Plaintiff attempted on several occasions to schedule a meeting with Dean Stomper during the Summer to discuss Plaintiff's concerns about the Paralegal Program, but although Dean Stomper stated via email that he would arrange a meeting with Plaintiff to discuss these matters, no meeting was ever scheduled.

42. In addition, the union contract provides that termination should not occur if remediation of the complained behavior of the adjunct would be possible. Although Plaintiff strongly contends he did nothing wrong; because Plaintiff loves to teach, Plaintiff informed Defendants on several occasions that he would agree to cease sending any other alleged controversial emails, if any sanctions against him did not involve termination. Despite Plaintiff's offer, Defendants never extended Plaintiff any opportunity of remedial action. Additionally, it should be noted that the first time Plaintiff was informed of the penalty of termination was when Plaintiff received the termination letter of January 30, 2016, from Defendant HANEY.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court order the following relief:

A. Issue Equitable Relief, to void CLC's termination of Plaintiff's employee status and reinstate him to his rightful position as an Adjunct Instructor in the CLC Paralegal Program;

B. Grant Plaintiff back pay for his compensation for the Legal Research and Writing course that was wrongfully taken from him by the Defendants;

C. Award Plaintiff reasonable compensation for the loss of his resources and library privileges due to his wrongful termination by the Defendants. These resources and privileges include, but not limited to: unfettered access to Westlaw and Lexis; IICLE Smart Books; other valuable resources that are available in CLC's vast data-base library; and authorization to download for free, or at reduced cost, products from Microsoft Office, Adobe Acrobat and other software that are afforded adjuncts at CLC;

D. Impose Exemplary Damages against the Defendants in the amount of $100,000 or another amount this Court deems appropriate for Defendants unwarranted intentional actions to deprive Plaintiff his constitutional rights to Due Process and Freedom of Speech; and

E. Any other Just Relief this Honorable Court determines should be provided to the Plaintiff for Defendants actions against him.

Respectfully Submitted,

s/ Jed Stone_____
One of attorneys for Plaintiff

Stone & Associates
415 Washington Street Suite 107
Waukegan, IL 60085
Phone 847 336 7888
Fax 847 336 0733
Email: jstone@jedstone.com