## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BARRY ROSE, AN INDIVIDUAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | 16-CV-5088 |
| | ) | |
| V. | ) | Judge Thomas M. Durkin |
| | ) | |
| | ) | |
| RICHARD HANEY, INDIVIDUALLY AND | ) | |
| IN HIS CAPACITY AS PROVOST OF THE | ) | |
| COLLEGE OF LAKE COUNTY AND THE | ) | |
| COLLEGE OF LAKE COUNTY, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barry Rose, a former adjunct professor in the Paralegal Program at the College of Lake County ("CLC"), brings suit pursuant to 42 U.S.C. § 1983 for wrongful employment termination. Defendants purportedly terminated Plaintiff for writing disrespectful emails to faculty and students, but Plaintiff alleges the true reason he was fired was that he exercised his First Amendment right to speak out about concerns he had with the Paralegal Program, including concerns about the teacher evaluation system and meetings of the Paralegal Advisory Board (Count I). Plaintiff also alleges that the process by which Defendants terminated his employment as an adjunct professor violated his rights to procedural due process (Count II). Defendants have filed a motion to dismiss and strike certain portions of the complaint. *See* R. 28 (hereinafter "Motion"). For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Id.* In addition, the Court may consider facts outside the complaint referenced by Plaintiff in her brief that are not contrary to any of the allegations in the complaint.[1]

---

[1] Defendants contend that the Court must disregard any facts alleged for the first time in Plaintiff's response brief. *See* R. 35 at 2-3. But that argument is incorrect. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n. 1 (7th Cir. 2012) ("If a moving

2

## BACKGROUND

The allegations of the complaint show that Plaintiff began teaching at CLC as an adjunct professor in the Paralegal Program in January 2007. R. 23, ¶ 1. He was nominated for Teacher of the Year in 2010 and 2011, and again in 2014. In 2010 and 2011, he was recognized as one of CLC's Outstanding Faculty of the Year. *Id.*, ¶ 2. Plaintiff has consistently been rated favorably by his students, receiving an average of 4.75 on a 5-point scale in his two most recent evaluations. *Id.,* ¶ 3.

In early 2011, Plaintiff met with Richard Haney, who at the time was Vice-President of Educational Affairs, to discuss Plaintiff's concern that CLC did not have a thorough, effective instructor evaluation system. *Id.,* ¶ 4. Haney admitted to Plaintiff that CLC's instructor evaluation methods were inadequate. *Id.,* ¶ 5. Shortly after the meeting, Plaintiff sent Haney an email recounting their discussion and offering to work on improvements to CLC's teacher evaluation system. *Id.* Haney neither contacted Plaintiff nor implemented any changes in the evaluation system. *Id.,* ¶ 6. Plaintiff therefore contacted the President of CLC to discuss his concerns. *Id.* The President, however, would not agree to meet with Plaintiff and instead referred him to Haney. *Id.* Plaintiff later wrote letters expressing his concerns about CLC's teacher evaluation process to two state senators. *Id.,* ¶¶ 26, 27.

---

party relies on additional materials, the motion must be converted to one for summary judgment under Rule 56. A plaintiff, however, has much more flexibility in opposing a Rule 12(b)(6) motion . . . . He may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings.") (internal quotation marks and citations omitted).

In April 2015, Plaintiff requested and received permission to attend the semi-annual meeting of the Paralegal Advisory Board. His invitation to attend the meeting, however, was later rescinded after he indicated that he wanted to discuss "the future of the adjuncts in the Paralegal Program." *Id.,* ¶¶ 7-8. Plaintiff complained that his exclusion from the meeting was in violation of the Illinois Open Meetings Act and the Public Community College Act, and he informed CLC that he intended to seek an official Attorney General Opinion on the open meeting requirement. *See* R. 33 at 4. As a result, CLC relented and allowed him to attend the meeting. *Id.* Plaintiff contends, however, that the CLC administrative staff treated him "coldly and harshly" at the meeting, where he was relegated to seating in the back row, passed over for introductions, and not allowed to speak. *Id.*; R. 23, ¶¶ 9, 10. After the meeting, Plaintiff alleges, he was "ostracized" by the CLC administration. *Id.*, ¶ 20.

On September 3, 2015, Plaintiff submitted requests to teach eight classes in the Spring 2016 semester, including two courses he had taught on numerous previous occasions. *Id.,* ¶ 19. CLC was obligated by the Adjunct Union Contract to extend Plaintiff an offer if any course for which he was qualified to teach was available. *Id.*; R. 33 at 13. The deadline for CLC to inform Plaintiff whether he would be offered any classes for the Spring 2016 semester was October 30, 2015. R. 23, ¶ 19.

On or about September 6, 2015, only a couple of business days after Plaintiff submitted his request to teach eight courses in the Spring 2016 semester, Haney

sent Plaintiff an email directing Plaintiff to attend an Investigatory Interview ("Interview") to discuss concerns about certain emails Plaintiff had sent to faculty and students. *Id.,* ¶ 21. Haney did not identify the emails at issue or inform Plaintiff whether he might suffer any consequences as a result of the Interview. *Id.* Plaintiff did not want to attend the Interview but was told he would be cited for insubordination if he did not appear. *Id.* Plaintiff asked which emails of his were of concern to CLC, and he received that information from Haney prior to the meeting. *Id.,* ¶ 28. The emails in question related to Plaintiff's issues with CLC's teacher evaluation system and CLC's refusal to allow Plaintiff to volunteer as a tutor at CLC's Writing Center. *Id.,* ¶ 22; *see also id.,* ¶ 16. According to Plaintiff, the emails "did not disparage any instructors o[r] other persons. Instead, the harshest comment Plaintiff ever made was that he believed that CLC did not always have the best interests of CLC students at heart." *Id.*, ¶ 16; *see also id.*, ¶ 17.[2]

On September 16, 2015, Plaintiff, along with his attorney and two union representatives, attended the Interview. *Id.,* ¶ 30. Plaintiff requested but was denied the right to have the co-chairs of his department attend so he could question them, as well as to have the Interview recorded. *Id.,* ¶ 30. Plaintiff was subjected to

---

[2] The emails are not part of the current record. Plaintiff alleges he does not have copies of them because CLC prematurely and without notice to him terminated his access to his faculty email account. R. 23, ¶ 36; R. 33 at 10. And while Defendants likely have copies of the emails, they did not attach them to their Motion. Thus, the Court must accept as true Plaintiff's characterization of the emails as "merely express[ing] concern whether CLC administration was acting in the best interests of its students," and as "critical of CLC policies" but not in a way that was "disrespectful, defamatory or derogatory of CLC personnel." R. 23, ¶ 17.

questioning at the meeting by Haney and an attorney. But when Plaintiff attempted to ask questions of his own, he was told he could not do so. *Id.,* ¶ 32.

On October 30, 2015, Plaintiff received an offer from CLC to teach Legal Research and Writing in the Spring 2016 semester. Plaintiff immediately accepted the offer by email. *Id.*, ¶¶ 19, 33. He was never presented with any contract in connection with this offer, however. *Id.,* ¶ 34. Instead, on December 15, 2015, Plaintiff was informed by letter that his email and other privileges to access CLC's faculty portal were immediately revoked pending the investigation, which was expected to be completed by the end of January 2016. *Id.,* ¶ 36. Plaintiff also was informed that he must attend a second Interview. *Id.,* ¶ 35. The second Interview was held on December 16, 2015, and, just like the earlier Interview, Plaintiff was not allowed to record the meeting, to ask any questions, or to present any evidence on his own behalf. *Id.* In January 2016, just before the start of the Spring 2016 semester, Plaintiff was informed that the offer he had accepted to teach Legal Research and Writing had been rescinded. *Id.,* ¶ 37. A short time later, on January 30, 2016, Plaintiff received a "detailed letter" from Haney with exhibits containing "many unfounded statements and conclusions," informing him that he was being terminated as an adjunct professor. *Id.,*¶ 38.

DISCUSSION

## I.    COUNT I—FIRST AMENDMENT RETALIATION CLAIM

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for

speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To make out a prima facie case of retaliation in violation of the First Amendment (made applicable to state actors through the Fourteenth Amendment), Plaintiff must show: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor behind the deprivation Plaintiff was made to suffer. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Defendants argue that Plaintiff has failed to plead sufficient facts to plausibly allege either the first or third requirements.

### A. ACTIVITY PROTECTED BY THE FIRST AMENDMENT

Defendants argue that Plaintiff has not adequately alleged that he engaged in an activity protected by the First Amendment. As an adjunct professor employed by a state community college, Plaintiff was a public employee. "In assessing the viability of a public employee's First Amendment claims, [the court] must make a threshold determination as to whether the speech that allegedly motivated the employer's adverse action was protected by the Constitution." *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). "The inquiry into the protected status of speech is one of law, not fact." *Id.*

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). At the same time, "a public employee does not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her

employment." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). In particular, government employees have a First Amendment right "to speak on matters of public concern, typically matters concerning government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment." *Id.* In striking a balance between the competing governmental interest of managing its employees and private interest of free speech, the Supreme Court has held that, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti,* 547 U.S. at 419. In addition, the Supreme Court in *Garcetti* imposed a threshold determination regarding whether the public employee spoke in his capacity as a private citizen or as an employee.

### 1. *GARCETTI* DOES NOT APPLY.

In *Garcetti,* the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S at 421. The Seventh Circuit has described this inquiry as a "threshold determination regarding whether the public employee spoke in his capacity as a private citizen or as an employee." *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009). The relevant inquiry for purposes of Defendants' Motion is whether Plaintiff was acting pursuant to his official duties as an adjunct professor when he engaged in the speech for which he was fired. That

inquiry is resolved by looking at "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks,* 134 S. Ct. 2369, 2373 (2014). Thus, "[p]ublic employee speech does not lose First Amendment protection because it concerns the subject matter of the employee's job." *Chrzanowski v. Bianchi*, 725 F.3d 734, 738 (7th Cir. 2013). "Likewise, public employees' speech is not subject to restriction simply because it occurs inside the office, since '[m]any citizens do much of their talking inside their respective workplaces.'" *Id.* (quoting *Garcetti*, 547 U.S. at 420-21)). As the Seventh Circuit explained, "speech does not 'owe[ ] its existence to a public employee's professional responsibilities' within the meaning of *Garcetti* simply because public employment provides a factual predicate for the expressive activity; rather, *Garcetti* governs speech that is made 'pursuant to official duties' in the sense that it is 'government employees' work product' that has been 'commissioned or created' by the employer." *Id.* (quoting *Garcetti,* 547 U.S. at 422).

Defendants argue that "Plaintiff has failed to plead that he was speaking as a private citizen." R. 29 at 4. But the issue on Defendants' Motion is not whether Plaintiff has formulaically alleged that he was speaking as a private citizen but whether the facts alleged would support a finding that he was. The protected speech alleged by Plaintiff for which he claims to have been fired includes his expressed concerns about the meetings of the Paralegal Advisory Board being open to the public and his emails to faculty and students regarding the teacher evaluation process and possibly other related concerns about CLC not acting in the best

interests of its students. Although neither party specifically discusses what the job duties of an adjunct professor in the CLC Paralegal Department are, it is reasonable to infer that they relate to the task of teaching, not to the tasks of ensuring open meetings of the Paralegal Advisory Board or even adequate teacher evaluations and other school policies to promote the best interests of the students. *Compare Garcetti*, 547 U.S. at 421 (memo written by deputy district attorney recommending that case be dismissed because of government misconduct was part of the attorney's duties for which he was employed); *McArdle,* 705 F.3d at 754 (the issues of adherence to district policies and its finances were all matters within the oversight of the plaintiff as school principal). In short, the facts alleged in the complaint suggest that Plaintiff's alleged speech for which he was terminated was *not* made "pursuant to official duties" in the sense that the speech in question was Plaintiff's "work product" that had been "commissioned or created" by CLC.

Citing to *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016), Defendants argue that Plaintiff's speech falls within his official duties because Plaintiff "expressed concerns about his work environment." R. 29 at 5. The Court cannot say on the current record (which does not include the communications at issue) whether Defendants' characterization of Plaintiff's speech as "express[ing] concerns about his work environment" is accurate. Plaintiff alleges his protected speech related not to his "work environment" but instead to the ways in which CLC's teacher evaluation methods and other aspects of the paralegal program failed to serve the student's best interests, as well as to whether open meeting laws were

being followed by the Paralegal Advisory Board. But even if Defendants' description of the content of Plaintiffs' speech was accurate, Defendants read *Kubiak* too expansively. *Kubiak* belongs to a specific line of cases that deals with an employee reporting misconduct of other employees. *See Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 903 (N.D. Ill. 2016). Unlike the facts in *Kubiak,* Plaintiff's alleged speech did not involve reporting official misconduct. *Kubiak* thus is not helpful to an analysis of the complaint in this case.

Even if this case involved the reporting of misconduct of another employee, the facts alleged in the complaint likely would pass muster. While it is true that a public employee who "reports official misconduct in the manner directed by official policy, to a supervisor, or to an external body with formal oversight responsibility . . . speaks pursuant to her official duties and her speech is unprotected by the First Amendment." *Id.* (citing cases). Similarly, an employee who reports misconduct affecting an area within his responsibility (even when not strictly required to report it), also speaks pursuant to his official duties. *See Hatcher v. Bd. of Trs. of S. Ill. Univ.*, 829 F.3d 531, 539 (7th Cir. 2016) (citing cases). But an employee is *not* speaking pursuant to his official duties when he either "testifies regarding misconduct to a jury or grand jury, or reports misconduct outside established channels or in violation of official policy." *Spalding*, 186 F. Supp. 3d at 904 (citing cases). In those situations, the Seventh Circuit has held that the employee's speech is constitutionally protected. *Id.* Plaintiff's alleged speech would appear to fall within the category of reporting misconduct outside established

channels and/or in an area for which he did not have any formal responsibilities. Therefore, Plaintiff's speech was the constitutionally protected speech of a private citizen. *See, e.g., Kristofek v. Vill. of Orland Hills,* 832 F.3d 785, 793 (7th Cir. 2016) (*Kristofek II*) (holding that a part-time police officer was not "*responsible* for pursuing or voiding citations, or for determining when and under what circumstances arrestees could be released," and, as a result, that he was speaking as a private citizen when he reported suspected police misconduct with regard to an arrestee's voided citation and release from custody) (emphasis in original).

Defendants nevertheless rely on the Seventh Circuit's comment in *Kubiak* that the plaintiff was "expected to report [ ] inappropriate behavior to a supervisor." 810 F.3d at 481-82. Defendants argue that, similarly, "Plaintiff is expected to take actions to improve his work environment, which he did by reporting concerns he had regarding the evaluation process of professors to the Provost and 'learn[ing] the latest developments in the Paralegal Program.'" R. 29 at 5 (internal citation omitted). Reporting misconduct, however, is not the same as seeking improvement in one's work environment, and, nothing in *Kubiak* suggests that reporting on the latter is an "expected" part of an employee's unofficial job requirements. *See Kristofek II*, 832 F.3d at 793 (rejecting the argument that the plaintiff "was 'doing what was expected of him and what he was generally paid to do' when he shared his concerns"); *Chaklos,* 560 F.3d at 712 (noting that the *Garcetti* Court "rejected the idea 'that employers can restrict employee's rights by creating excessively broad job descriptions'") (quoting *Garcetti*, 547 U.S. at 424)). In short, the Court concludes

that the facts alleged—speech about improving the teacher evaluation process and about the requirements for public meetings under Illinois statutes—is not speech that is expected of Plaintiff in his job as an adjunct professor in the CLC Paralegal Program. Consequently, as alleged, Plaintiff's speech was made in his capacity as a citizen and not in his capacity as a public employee.

> ### 2. PLAINTIFF'S SPEECH PERTAINS TO A MATTER OF PUBLIC CONCERN

Defendants argue that even if Plaintiff was speaking as a citizen rather than as a public employee, his statements were not of public concern and thus should not be constitutionally protected. The Supreme Court has explained that "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego,* 543 U.S. at 83-84. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "The motive of the speaker is relevant as part of the context in which the speech was made but is not dispositive." *Kubiak*, 810 F.3d at 483. Rather, the courts are to use the content, form, and context to determine whether the objective of the speech is "to bring wrongdoing to light or to further some purely private interest." *Id.* (internal quotation marks and citation omitted).

Defendants again rely on *Kubiak,* this time to argue that Plaintiff's speech did not address a matter of public concern. The *Kubiak* court held that the plaintiff's speech in that case did not address a matter of public concern because the

plaintiff's objective "was to further her personal interest in remedying an employee grievance." *Id.* Additionally, the court observed, the fact that the plaintiff's "complaints were all made internally" indicated that her speech was motivated primarily by personal concerns. *Id.* at 484. The facts in *Kubiak* are very different from the facts before the Court. Accepting the allegations of the complaint regarding the content of Plaintiff's speech as true, Plaintiff was not speaking about a personal grievance he had over something that happened to him; for instance, there is no allegation that Plaintiff's speech related specifically to his own teacher evaluations. Defendants thoroughly misapprehend the relevant inquiry when they argue that the requirement of a public concern is not satisfied because Plaintiff's "lawsuit relates to personal work-related grievances he has against the Defendants." R. 29 at 6. The issue is not whether Plaintiff's *lawsuit* relates to a personal grievance but whether his speech was so related. While it is true enough that Plaintiff's current lawsuit relates to his personal grievance against Defendants, the speech that is the subject of Plaintiff's personal grievance currently before the Court did not itself involve a personal grievance. Instead, Plaintiff's speech expressed his personal views about how the administration generally handled teacher evaluations and meetings of the Paralegal Advisory Board. The changes for which Plaintiff was advocating would affect not only Plaintiff but all professors in the Paralegal Program at CLC, and all members of the public who wanted to attend Paralegal Advisory Board meetings. *Compare City of San Diego*, 543 U.S. at 84 (plaintiff's

speech did not touch on matters of public concern where it "did nothing to inform the public about any aspect of [his employer's] functioning or operation").

As to Plaintiff's motives, the primary focus of Plaintiff's speech as it is alleged in the complaint was the manner in which the evaluation system and other matters affected the best interests of the *students*, not himself. That Plaintiff was not motivated solely or even primarily by his own self-interest is shown by the fact that his speech was not directed exclusively to his supervisors within the administration of CLC. Instead, Plaintiff alleges that he sent emails to students and other faculty, and even outside the CLC system to two state representatives. R. 23, ¶¶ 26-27.[3] This "create[d] a 'communicative element' putting the listener[s] on notice that a matter of public concern [was] being raised." *Miller v. Jones*, 444 F.3d 929, 936 (7th Cir. 2006) (citation omitted) (finding protected speech where police officer complained about police chief's actions to several separate entities including civilian oversight board); *see also Kristofek II,* 832 F.3d at 795 ("By reaching out first to [fellow police officers], and then to the FBI, [the plaintiff] explicitly and formally sought to alert a greater audience of the possible harm at issue.") (internal quotation marks and citation omitted).[4]

---

[3] Defendants argue that Plaintiff's letters to the state representatives are irrelevant because Defendants did not know about them and Plaintiff was not terminated because of them. Of course, those are factual issues outside the complaint. But in any event, Defendants' asserted facts outside the complaint are not relevant because the purpose of citing to the letters is to show that Plaintiff had a public motive in raising the issues discussed in the letters.

[4] The fact that Plaintiff may also have been affected personally by the issues that were the subject of his speech is not dispositive. As the Seventh Circuit explained in *Kristofek v. Village of Orland Hills (Kristofek I)*, "a public employee's speech may

In *Meade v. Moraine Valley Community College*, 770 F.3d 680 (7th Cir. 2014), the Seventh Circuit had "no trouble concluding" that a letter written by an adjunct at a community college criticizing the way in which the community college treated adjunct professors raised issues of public concern. *Id.* at 684. The letter, the court said, "contained almost no content personal to [the plaintiff]," and its "multiple references to difficulties facing all [ ] adjuncts remove[d] it from the realm of the purely personal." *Id.* Moreover, the court noted, the plaintiff was "not alone in expressing concern about the treatment of adjuncts. Colleges and universities across the country are targets of increasing coverage and criticism regarding their use of adjunct faculty." *Id.* at 684-85 (citing sources). Finally, the court observed, the plaintiff's "attempt to link the treatment of adjunct faculty to student performance underscore[d] the public dimension of her comments." *Id.* at 685.

Plaintiff alleges that he too linked his criticisms of teacher evaluations to the interests of the students in the emails he sent. As the Seventh Circuit said about the adjunct professor's speech in *Meade*, "[i]t is difficult to see how any part of this discussion could be considered purely personal to [the plaintiff], or of zero interest

still be protected if the speaker's motives were mixed, and also included a desire to help the public, . . . and at no point does the complaint allege that [the plaintiff's] *only* motive was to protect himself. The mere fact that [the plaintiff] was motivated by his self-interest does not make it implausible that he was *also* motivated to help the public." 712 F.3d 979, 984 (7th Cir. 2013) (emphasis in original). Moreover, "even if [the plaintiff] were motivated *exclusively* by his own self-interest, his First Amendment claim would not necessarily be dismissed. As [the Seventh Circuit] ha[s] stated before, motive alone does not conclusively determine whether a public employee's speech involves a matter of public concern. The marketplace of ideas would become quite impoverished indeed if anyone (including public employees) motivated solely by his or her own self-interest were precluded from participating in it." *Id.* at 985 (emphasis in original) (internal citations omitted).

to the public. The people who attend [the community college], along with their families and others who live in the area, no doubt want to know if this practice poses a threat to student performance." *Id.* Given the similarities of *Meade* to this case, the Court must join with Plaintiff in questioning how Defendants could fail to acknowledge it in their brief in support of their Motion, even if their position is that it is distinguishable from this case on a number of grounds. In any event, Defendants' arguments for distinguishing *Meade* are not compelling. Based on *Meade,* the Court categorically rejects Defendants' argument that Plaintiff's alleged speech did not touch upon a matter of public concern.

### B.  CAUSATION ISSUE

Defendants also argue that Plaintiff has failed to allege that his First Amendment activity was at least a motivating factor behind his termination. *See* R. 29 at 3. Defendants have not developed this argument either factually or legally. For purposes of their Motion, therefore, the argument is waived. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (explaining that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived" (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))).

Even if the Court were to consider Defendants' causation argument, however, it is without merit. The issue once again is not whether Plaintiff formulaically recites in the complaint that the speech in question "was a motivating factor" in his termination, but whether the facts alleged in the complaint plausibly suggest such a

motivation. Plaintiff alleges he was investigated for sending emails to students and faculty about certain concerns he had with the CLC Paralegal Program and that this was the basis for his termination. There is nothing in the record at this point in the proceedings (such as the termination letter itself) to contradict Plaintiff's allegations. Accordingly, Plaintiff has plausibly alleged that his termination was motivated by his alleged First Amendment activity of writing the emails in question. *See Meade,* 770 F.3d at 682 (where written termination notice received by adjunct professor "explicitly cit[ed]" the adjunct's letter to an outside community college advocacy organization as the reason for the college's decision to fire her).

Although the Court cannot say for certain (because Defendants have not explained themselves), Defendants' causation argument likely was intended to address Plaintiff's allegations about speaking out against being excluded from the Paralegal Advisory Board meeting because Defendants may know that Plaintiff's comments about the board meeting were not one of the reasons cited by Haney in the termination letter for Plaintiff's termination. But as discussed, the termination letter is not in the record. Furthermore, even if the letter does not specifically mention Plaintiff's complaints about the meeting, those complaints are plausibly related to Plaintiff's advocacy on behalf of students in the alleged emails he sent to students and faculty. *See* R. 33 at 11 (stating that Plaintiff's letters to state senators about the faulty teacher evaluation system also referenced Plaintiff's request to get the Paralegal Advisory Board Meetings open to the public). Plaintiff's emails were the subject of CLC's investigation of him and presumably (based on the complaint's

allegations) the reason why Plaintiff was terminated. Moreover, even apart from a connection between Plaintiff's complaints about the Paralegal Advisory Board meeting and his emails to faculty and students, the Court concludes that the complaint contains adequate factual content to plausibly suggest that Defendants' decision to terminate Plaintiff's employment was at least partially motivated by Plaintiff's complaints about the meeting. *See Hatcher*, 829 F.3d at 538 ("The short timing between the filing of the charge and Chancellor Cheng's decision, . . . and a lack of other allegations in the complaint which rule out retaliation as a cause for the decision, all take Dr. Hatcher's retaliation claim from the realm of the possible into the realm of plausible.").

## II.    COUNT II–PROCEDURAL DUE PROCESS CLAIM

Defendants also move to dismiss Count II of the complaint, asserting that Plaintiff has failed to allege sufficient facts to support a violation of his right to procedural due process. To plead a procedural due process claim, a plaintiff must allege a cognizable property interest, a deprivation of that property interest, and a denial of due process. *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607 (7th Cir. 2014). Defendants concede for purposes of their Motion that Plaintiff has adequately pled facts to satisfy the first two requirements of a cognizable property interest and a deprivation of that interest. *See* R. 29 at 7 ("assuming, *arguendo*, that Plaintiff possessed a property interest . . ."); R. 35 at 7 (same). Therefore, the only issue before the Court is whether the procedures followed by Defendant to terminate Plaintiff's employment were constitutionally adequate. *See Cleveland Bd.*

*of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) ("the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures").

Defendants' arguments on the procedural due process issue focus on the requirements for a pre-termination hearing. *See Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 803-04 (7th Cir. 2000). "A public employer who removes an employee from a job in which the employee has a constitutionally protected interest must provide certain limited pre-termination procedures, including, at a minimum: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his or her side of the story." *Id.* at 803-04 (footnote omitted) (citing *Loudermill*, 470 U.S. at 546, and *Staples v. City of Milwaukee*, 142 F.3d 383, 385 (7th Cir. 1998)). In addition, "the chosen decisionmaker must be impartial." *Id.* at 804 (citing *Bakalis v. Golembeski*, 35 F.3d 318, 323-26 (7th Cir. 1994)).

Defendants argue that these requirements were satisfied, citing to the general statement in *Head* that "[n]otice is constitutionally adequate if it is reasonably calculated to apprise interested parties of the proceeding and afford them an opportunity to present their objection." 225 F.3d at 804. But Defendants ignore the actual facts in *Head*. There*,* the notice informed the plaintiff that a "*removal* hearing had been scheduled . . . and *detailed four particular grounds* on which his removal was being sought." *Id.* (emphasis added). Further, the plaintiff in *Head* "*admitted* that he was fully apprised of the charges at the hearing and that

afterwards he was able to submit a brief in response to the evidence presented at the hearing." *Id.* (emphasis added). Therefore, the court found "it impossible to conclude that [the plaintiff] did not receive adequate notice of the charges that led to his removal." *Id.*

The allegations in the complaint paint a very different picture from what occurred in *Head*. Plaintiff alleges that he received an email from Haney directing him to "attend an Investigatory Interview to discuss concerns about emails Plaintiff sent to faculty and students." R. 23, ¶ 21. Plaintiff was "not advised of any consequences he might suffer as the result of this Investigatory Interview." *Id.* These allegations plausibly suggest that Plaintiff was neither provided sufficient notice of the charges against him nor a sufficient explanation of CLC's evidence against him.[5] Although Plaintiff admits in the complaint that CLC ultimately did identify for him which emails they had concerns about, and that this was done prior to the hearing, *see* R. 29 at 9, a reasonable inference from Plaintiff's allegations is that Defendants did not explain their concerns, what the charges were, or whether any other evidence existed on which Defendants based their charges. In short, the allegations in the complaint do not demonstrate that Plaintiff was accorded constitutionally adequate notice of the charges or of the evidence against him.

---

[5] *See also* R. 23, ¶¶ 40 a, e (alleging he was not advised that he might be subject to termination as a result of the Interview); *id,* ¶ 40 f ("Plaintiff's email access, and access to other faculty resources at CLC was terminated . . . without first being informed that it would be done"); *id,* ¶ 42 ("the first time Plaintiff was informed of the penalty of termination was when Plaintiff received the termination letter of January 30, 2016"); R. 33 at 11 (Plaintiff "was not advised of any legal authority and any basis for the Investigative Interview at which he was ordered to appear").

Likewise, Plaintiff has alleged facts plausibly suggesting that he was not given a pre-termination chance to tell his side of the story. Plaintiff alleges that at the first Interview he "was subjected to questions from Defendant Haney and the attorney from . . . Robbins, Schwartz [presumably representing CLC]," but that when he tried to ask any questions, Defendant was informed [sic] that Plaintiff was there to only answer questions, not to ask any of his own." R. 23, ¶ 32.[6] Defendants argue that the law does not require that Plaintiff be given an opportunity to call witnesses in his defense at a pre-termination hearing. But Plaintiff's complaint does not rest on the allegation that he was unable to call witnesses. Instead, Plaintiff's allegations suggest that he was not allowed to tell his side of the story in any manner whatsoever. Defendants ask the Court to infer from the allegations that Plaintiff did in fact have that opportunity. *See, e.g,* R. 29 at 9 (pointing out that Plaintiff alleges that he "answered the College's questions during those meetings"). But it is just as reasonable to infer the opposite from the complaint's allegations.[7] On a motion to dismiss, the Court must resolve any ambiguities in the complaint's allegations in favor of Plaintiff. It may turn out to be the case that Plaintiff did have

---

[6] This allegation could also plausibly relate to whether Plaintiff received adequate notice of the charges against him, depending on whether the questions Plaintiff was not allowed to ask related to his lack of knowledge over what those charges were.

[7] *See* R. 23, ¶ 32 ("Defendant was informed [sic] that Plaintiff was there to only answer questions"); *id.* ¶ 35 (alleging that a second Investigatory Interview was held in December 2015 and that, "[c]onsistent with the earlier meeting [in September], Plaintiff . . . was not allowed to ask any questions or present evidence on his behalf"); *id.,* ¶ 40 c (Plaintiff was not "advised that he could . . . offer his own testimony"); *see also* R. 33 at 14 (Plaintiff was not allowed to "speak on his own behalf").

the opportunity to present his side of the story at the two Interviews. But the Court cannot resolve that disputed factual issue on a motion to dismiss.

In any event, the requirements for a pre-termination hearing are only one part of the procedural due process inquiry. *See Loudermill,* 470 U.S. at 548 ("We conclude that all the process that is due is provided by a pre-termination opportunity to respond, *coupled with post-termination administrative procedures* as provided by the Ohio statute.") (emphasis added); *Head*, 225 F.3d at 803 n.8 ("Limited pre-termination procedures are permissible *only* if full post-termination procedures are available.") (emphasis added). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citations omitted). Plaintiff's allegations, as well as his arguments in his brief in opposition to Defendants' Motion, plausibly raise the broader due process issue of whether he received an opportunity to be heard at a meaningful time and a meaningful manner, taking into account both pre-termination and post-termination procedures that were available. In other words, as the Court reads Plaintiff's due process claim, he is alleging that he was *never* given a meaningful opportunity to contest his termination, either pre- or post-termination.[8] If that is indeed what

---

[8] *See, e.g.,* R. 23, ¶ 40 (CLC Employee Handbook specifically indicates that terminated adjuncts are to be afforded Due Process); *id.*, ¶ 41 (the Adjunct Union Contract requires that any investigation must be initiated by the appropriate Dean); *id.*, ¶ 42 (the union contract also provides that termination should not occur if remediation of the complained behavior of the adjunct would be possible); *see also* R. 33 at 12 ("The Board of Trustees . . . authorized the termination of Plaintiff's employment at CLC after CLC had already voided Barry's contract to teach; and

Plaintiff's due process claim is, then it does not depend exclusively on whether

Plaintiff was accorded a constitutionally adequate pre-termination hearing. It may

be that Plaintiff was afforded a post-termination remedy to challenge his

termination, and therefore that the only issue open to debate is whether

---

CLC did not offer Barry any opportunity to appeal his termination before a fair arbiter."); *id.* at 14 ("Section 331 of CLC Employee Handbook, specifically indicates that terminated adjuncts are to be afforded Due Process. This section does not state that only minimal Due Process need to be provided to adjuncts."); *see also* R. 33 at 12-13 (citing *Patterson v. Portch*, 853 F.2d 1399, 1405 (7th Cir. 1988) (holding that a tenured instructor could not be deprived of his job without due process of law), and *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998) ("when the procedures used to investigate the charges are a sham through and through there has not been a constitutionally sufficient opportunity to respond"). Defendants argue that Plaintiff's citations to *Patterson* and *Levenstein* are inapposite because those cases involved the procedural requirements for terminating a tenured professorship in the State of Wisconsin, as well as the issue of constructive discharge. *See* R. 35 at 8-9. Defendants also argue that Plaintiff did not have a contractual right to remediate his actions apparently because his termination fell within a provision of the Adjunct Union Contract which states that "inappropriate comments or behavior towards students or staff, insubordination, [or] abusive conduct" may be deemed irremediable. *See* R. 29-1 at 27 (citing Article 4(b)(5)). Defendants do not make clear whether they are arguing that Plaintiff did not have a property right in his employment or whether they are arguing that the process afforded him met the requirements of his employment contract. To the extent that they are arguing that Plaintiff did not have a property right because he was not a tenured professor, that argument has not been developed and therefore is waived for purposes of the present Motion. *See Hassebrock*, 663 F.3d at 914. To the extent that they are arguing that the procedures used to terminate Plaintiff satisfied the requirements of his contract or of an applicable Illinois statute, that issue involves disputed facts outside the complaint. Moreover, even if the procedures used to terminate Plaintiff satisfied the requirements of the applicable state statutes or union contract, that does not necessarily mean they satisfied the requirements of due process. *See Loudermill,* 470 U.S. at 540-41 ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards. In short, once it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the Ohio statute.") (internal quotation marks and citations omitted).

Defendants' pre-termination procedures were constitutionally adequate. But the Court cannot say that is the case based on the current record.[9]

## III. DEFENDANT HANEY

Defendant Haney makes several arguments for why he should be dismissed as a defendant even if CLC is not.

### A. OFFICIAL CAPACITY CLAIMS

Plaintiff has named Defendant Haney as a defendant in this lawsuit both individually and in his current official capacity as Provost of CLC. Haney argues that Plaintiff's official capacity claims against him are duplicative of Plaintiff's claims against CLC. Haney is correct. Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiff's claims against Haney in his official capacity are the equivalent of suing CLC, which is already a named defendant appearing in this action. Therefore, the official capacity claims against Haney are redundant of the claims against CLC and are dismissed with prejudice. *See, e.g., Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015).

---

[9] In *Head,* the Seventh Circuit noted that, because the parties did "not challenge the proposition that the legal framework governing limited pre-termination procedures applies, [the court would] assume full post-termination procedures [were] available. 225 F.3d at 803 n.8. But the court was ruling in that case on a motion for summary judgment. Here, the Court is ruling on a motion to dismiss and cannot make the same assumption given the allegations in the complaint and Plaintiff's arguments in his brief.

## B.    INDIVIDUAL CAPACITY CLAIMS

Haney also makes a number of arguments for why Plaintiff's individual capacity claims against him should be dismissed. These include the arguments that: (1) Haney is entitled to absolute immunity because he was acting "within the scope of his employment"; (2) Plaintiff has failed to plead facts that plausibly suggest he was engaged in an activity protected by the First Amendment; (3) Plaintiff has failed to plead facts that plausibly suggest he was denied procedural due process; and (4) Haney is entitled to qualified immunity. *See* R. 29 at 11-14. The Court already has rejected the second and third arguments with respect to CLC, and that reasoning applies to Haney as well. As to Haney's argument for absolute immunity, it is perfunctory and undeveloped, and therefore the Court will not consider it at this time. *See Hassebrock*, 663 F.3d at 914.[10] Thus, the only argument presented by Defendants regarding the individual capacity claims against Haney warranting discussion is the argument that those claims are barred by the doctrine of qualified immunity.

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft* v. *al–Kidd*, 563 U.S. 731, 743 (2011). Under this doctrine, courts may not award damages

---

[10] There is a fifth argument in Defendants' reply brief that Plaintiff's individual capacity claim against Haney is speculative. *See* R. 35 at 9-10. The Court will not consider this new argument because it is raised for the first time on reply. *See Narducci v. Moore,* 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited"). In addition, the argument is perfunctory and undeveloped. *See Hassebrock*, 663 F.3d at 914.

against a government official in his personal capacity unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct." *Id.* at 735. The issue of qualified immunity is to be resolved at the earliest stages of litigation. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 352 (7th Cir. 2005).

Haney argues that the Court should decide for purposes of his qualified immunity argument whether Plaintiff's allegations establish a violation of a protected right. R. 29, at 13. The Court already has found that the facts alleged in the complaint plausibly suggest a violation of Plaintiff's First Amendment and Due Process rights. Haney's arguments for why Plaintiff has *not* established a violation of a protected constitutional right depend on asserted facts that are either outside the complaint or contradict the facts alleged in the complaint.[11] Given that the facts are in dispute, a ruling at this stage as to whether such violations have been *established* would be premature. Thus, the Court's analysis of Haney's qualified immunity argument must assume that Plaintiff can establish a violation of either his First Amendment or Due Process rights, and ask instead whether Haney could reasonably have believed at the time he fired Plaintiff: (1) that a community college could fire an adjunct professor because of emails he sent to students and faculty

---

[11] *See* R. 29 at 14 (asserting contrary to the facts alleged in the complaint (1) that Plaintiff "was given an opportunity to tell his side of the story" at the meetings, and (2) that the emails Plaintiff sent to faculty were "disparaging"); *id.* (citing to paragraphs 15 and 16 of the complaint in asserting that "faculty members of the College had complained that [Haney] had sent disparaging emails to them," when those paragraphs do not allege any information about faculty members' complaints to Haney, and also asserting without citing to the complaint that Haney's investigation of Plaintiff was prompted by "reports of harassment by [Plaintiff]").

that were critical of the teacher evaluation system for the program in which the adjunct professor taught and/or advocated that the public be allowed to attend meetings of an advisory board of which he was not a member; and (2) that a community college could fire an adjunct professor when the professor was not provided pre-termination notice of the charges and evidence against him or an opportunity to present his side of the story and/or when the professor was not given an adequate post-termination opportunity to challenge his termination.

"To prove the presence of a clearly established constitutional right, the plaintiff must point to closely analogous cases decided prior to the defendants' challenged actions." *Kiddy-Brown*, 408 F.3d at 353 (internal quotation marks and citation omitted). Taking the facts in the light most favorable to Plaintiff, as the Court must at this stage of the proceedings, the Court concludes that the law was clearly established that Plaintiff had a First Amendment right to speak on the matters and in the manner in which he did, and that Defendants' termination of Plaintiff's employment because of that speech violated Plaintiff's constitutional rights. *See Kristofek II*, 832 F.3d 785; *Meade*, 770 F.3d 680; *Chaklos,* 560 F.3d at 711; *see also Kristofek I*, 712 F.3d at 986-87 ("We pause to stress that nothing in the above discussion should be construed as establishing new law."); *Sousa v. Roque*, 578 F.3d 164, 173-74 (2d Cir. 2009) ("To the extent that our precedents have been less than clear, we reaffirm today . . . a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern."). In addition, the Court concludes on the facts as alleged that the law was clearly

established that the procedures afforded by Defendants prior to and after Plaintiff's termination were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. *See Mathews*, 424 U.S. 319; *Loudermill*, 470 U.S. 538; *Head*, 225 F.3d 794. Thus, Defendant Haney's motion to dismiss the individual capacity claims is denied.

## IV. Motion to Strike

Defendants' final argument is that certain paragraphs of the complaint should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The principles applicable to a motion to strike are set out in Judge St. Eve's opinion in *Callahan v. Aldridge*, 2010 WL 3909482 (N.D. Ill. Oct. 1, 2010):

> Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed. R. Civ. P. 12(f)). Motions to strike pursuant to Rule 12(f) are disfavored, *see Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1405-06 (7th Cir. 1991), and often squander judicial resources. *Cf. Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 728 (7th Cir. 2006) (Easterbrook, J.) (in chambers). Motions to strike are appropriate, however, if they serve to expedite litigation. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken if matter bears no possible relation to controversy). District courts have considerable discretion to strike allegations under Rule 12(f). *See Delta*, 554 F.3d at 1141-42. "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (citation and internal quotation omitted).

*Id.* at *1.

Defendants fail to make any argument as to why the allegations they single out in their brief are "immaterial, impertinent, or scandalous." The factual matters asserted in those allegations appear to be relevant to the litigation. The fact that the allegations may contain legal conclusions in addition to factual matters is not a basis for striking them. Neither Plaintiff's request for discovery, nor his references to four individuals who are potential defendants not currently named in the lawsuit, is prejudicial to Defendants. Plaintiff likely would be entitled to discovery regarding those individuals' role in the matters at issue regardless of whether their names were mentioned in the complaint. To the extent that discovery is inappropriate, a motion brought pursuant to Rule 26 or Rule 45 would be the appropriate vehicle to present that issue. Finally, while Defendants are correct that Plaintiff may not recover punitive damages from a public entity or a public official sued in his official capacity, public officials sued in their individual capacity (such as Defendant Haney) can be liable for punitive damages. *See Smith v. Wade,* 461 U.S. 30, 35 (1983). With this clarification, Plaintiff's request for punitive damages in his prayer for relief is not improper and thus will not be stricken.[12]

---

[12] Defendants also make the substantive argument that Plaintiff's prayer to recover punitive damages against Haney should be stricken because the complaint does not adequately allege facts to support a claim that Haney acted with malice or evil intent, or in callous disregard of Plaintiff's federally protected rights. *See* R. 35 at 12. The Court will not consider that argument, however, because it is made for the first time in Defendants' reply brief. *See Narducci,* 572 F.3d at 324. Moreover, the facts alleged and construed most favorably to Plaintiff are sufficient to plausibly suggest that Haney acted with at least callous disregard for Plaintiff's First Amendment

## CONCLUSION

For the forgoing reasons, Defendants' Combined Motion To Dismiss Plaintiff's Amended Complaint And Motion To Strike Prayer For Relief, R. 28, is granted insofar as the official capacity claims against Defendant Haney are concerned. In all other respects, the Motion is denied.

ENTERED:

_____ *Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 8, 2017

---

and Due Process rights. Whether Plaintiff's punitive damages claim will survive summary judgment is for a later day.